**IN THE UNITED STATES DISTRICT COURT+**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GILLETTE HAWKINS, | ) Civil Action No. 2: 13-cv-0042 |
| Petitioner, | ) United States District Judge |
| v. | ) Arthur J. Schwab |
| SUPERINTENDENT OF SCI-HUNTINGDON and THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, | ) United States Magistrate Judge ) Cynthia Reed Eddy |
| Respondents. | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.      RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus filed by state prisoner Gillette Hawkins pursuant to 28 U.S.C. § 2254 be denied and that a certificate of appealability be denied.

## II.     REPORT

### A.      Relevant and Procedural Background

Petitioner, Gillette Hawkins ("Petitioner" or "Hawkins"), is challenging the judgment of sentence that was imposed upon him by the Court of Common Pleas of Allegheny County on May 8, 2006, after a jury found him guilty of murder of the first degree, burglary, aggravated assault – serious bodily injury, criminal attempt (homicide) and criminal conspiracy. Judge Lawrence J. O'Toole sentenced Hawkins to life imprisonment for the murder conviction plus a consecutive period of incarceration of 210 to 420 months. (Sentencing Transcript, 5/8/2006, at 17).

The Superior Court of Pennsylvania affirmed Hawkins's conviction, and the Supreme Court of Pennsylvania denied further review. The factual background of this case (which is substantiated by this Court's review of the state court record) is succinctly set forth in the April 23, 2008, Memorandum of the Superior Court citing to the opinion of the trial court:

> The Co-Defendant, Rebecca Young,[1] who is [Hawkins's] cousin, and the murder victim, Damond Hunter, had been dating since the early summer of 2005; however, the couple had been experiencing relationship problems. On at least two occasions, the Co-Defendant, in the presence of other persons, threatened to have someone harm Mr. Hunter. On the night of October 12, 2005 at about 10:30 p.m., pursuant to a pre-arranged plan, [Hawkins] and the Co-Defendant drove to the intersection of Whitney Avenue and Center Street in the Wilkinsburg section of Allegheny County. The Co-Defendant got out of the vehicle and walked to the home of Sean Arrington and Allyson Lynn Cyrus-Arrington, where Mr. Hunter was spending the evening sitting on the porch with Henry Norris. Since [Hawkins] did not know Mr. Hunter, the plan was that the Co-Defendant would identify Mr. Hunter by embracing him and kissing him. When the Co-Defendant arrived on the porch, she embraced Mr. Hunter as planned. [Hawkins] then came out of the shadows holding a 9 mm pistol and held it to Mr. Hunter's head. [Hawkins] ordered Mr. Hunter and Mr. Norris to go inside the Arrington's home and go upstairs. The Co-Defendant left the scene at this point and walked back up the street to [Hawkins's] black Honda Accord. Once on the second floor, [Hawkins] asked for "the works" and he ordered Mr. Norris to knock on the door to the third floor of the house. Ms. Cyrus-Arrington, who lived on the third floor with her husband, came down and opened the door. Seeing the gun, she panicked. [Hawkins] shot her in the face, critically wounding her, and then shot Mr. Hunter in the back of the head, killing him. [Hawkins] fled the scene, met up with the Co-Defendant at the Honda, and drove to his residence in [McKees Rocks].

*Commonwealth v. Hawkins,* 1115 WDA 2006 (Pa. Super. Ct. 2006), (unpublished memorandum) (citing Trial Court Opinion, 1/8/07, at 2-3), *appeal denied*, 367 WAL 2008 (Pa. 2008) (table).

On July 17, 2009, Hawkins challenged his convictions under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 – 46. The PCRA court denied his

---

[1]     The record reflects that co-defendant, Rebecca Young, was found guilty of Second Degree Murder, Burglary, Aggravated Assault, and Criminal Conspiracy. She was found not guilty of Robbery. Young was sentenced to life imprisonment with a consecutive period of incarceration of not less than thirteen and one-half years (13-1/2) nor more than twenty-seven (27) years.

petition and the Superior Court affirmed. The Pennsylvania Supreme Court denied further review on November 28, 2012.

Thereafter, Hawkins filed the instant federal habeas corpus petition pursuant to 28 U.S.C. § 2254. (ECF No. 4). Respondents filed an Answer (ECF No. 10), Amended Answer (ECF No. 14), and the relevant state court records. In addition to the Petition, Answer, and Amended Answer, the Court has reviewed the transcript of Hawkins's jury trial held in state court from March 1, 2006, through March 7, 2006, before Judge Lawrence J. O'Toole, as well as the transcripts of the pretrial motions hearing on February 28, 2006; the sentencing hearing on May 8, 2006; and the three Grazier hearings held on June 8, 2010, March 20, 2013, and June 26, 2014; and the PCRA hearing held on September 25, 2013. The matter is ripe for disposition.[2]

**B.  Standard of Review**

1.  <u>28 U.S.C. § 2254</u>

This case is governed by the federal habeas statute applicable to state prisoners. 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, enacted on April 24, 1996 ("AEDPA"). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any

---

[2]  This case was stayed for a period of time during which Hawkins pursued a new PCRA petition in which he claimed new evidence in that he had a witness that would testify that she was present at the time of the crime, that she saw a man running from the residence where the shooting occurred, and that man was not Hawkins. A hearing was held by the PCRA trial court for the purpose of hearing testimony from this witness. The witness did not appear at the hearing and the PCRA petition was dismissed. Hawkins filed a Notice of Appeal, but on November 2, 2015, he notified the Superior Court that he was discontinuing the appeal. (ECF No. 24). This case was reopened on November 23, 2015, upon notification that the appeal had been discontinued.

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Clearly established Federal law" is to be determined by the holdings of the United States Supreme Court. *Parker v. Matthews*, -- U.S. --, 132 S. Ct. 2148 (2012). A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

In *Harrington v. Richter*, ––– U.S. ––––, 131 S. Ct. 770 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under de novo review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted). Therefore, a

petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

    2.    <u>Threshold Requirements under 28 U.S.C. § 2254</u>

    a.    *AEDPA's Statute of Limitations*

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed under AEDPA's one-year limitations period. 28 U.S.C. § 2244(d). Hawkins had until July 3, 2013 to file for federal habeas relief. Giving Hawkins the benefit of the prisoner mailbox rule, the Court finds that Hawkins initiated this federal habeas proceeding on January 1, 2013, the date the petition was signed and placed in the prison mailing system. Therefore, Hawkins' claims are timely under AEDPA's statute of limitations.

    b.    *Exhaustion and State Court Procedural Default*

Next, the Court must address the threshold question of whether Hawkins exhausted the "remedies available [to him] in the courts of the State." 28 U.S.C. § 2254(c). This requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims. However, if relief is no longer available in state court, exhaustion may be excused. *Carter v. Vaughn*, 62 F.3d 591, 594 (3d Cir. 1995).

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the doctrine of procedural default. Procedural default can only be excused if there is cause and prejudice or where failure to review the claim would result in a fundamental miscarriage of

justice. *Coleman v. Thompson*, 501 U.S. 722, 751 (1991). A claim may become procedurally defaulted in two ways. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. In Pennsylvania, this requirement means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Superior Court of Pennsylvania either on direct or PCRA appeal. *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

## C. Discussion of Petitioner's Claims

In the instant petition, Hawkins explicitly contends that he is entitled to relief on the following four claims:

1. "The trial court erred in failing to grant the motion to sever Petitioner's case from the co-defendant's case."

2. "There was insufficient evidence to support the crime of criminal conspiracy."

3. "Trial counsel rendered ineffective assistance when he did fail to request that Petitioner's homicide jurors be read an instruction admonishing them to consider the I.D. (identification testimony of the Commonwealth witness) testimony of Commonwealth witness Allyson Cyrus Arrington with caution."

4. "Petitioner is entitled to have this § 2254 granted because Petitioner's federal due process and effective assistance of counsel rights were violated when trial counsel failed to request that the jury be instructed that would be alibi witness Erskine Smith's non-appearance was due to trial counsel's failure to subpoena him or seek enforcement of a subpoena and not

because the alibi witness would have contradicted Petitioner's alibi defense."

In a footnote, however, Hawkins asks the Court to consider claims 2, 3, 4, and 5 that were raised to the Superior Court in his PCRA appeal and which were found to be waived by the appellate court. Those four claims, which raise layered ineffective assistance of counsel arguments, are as follows:

5. "Did trial counsel render ineffective assistance when he failed to request that Appellant's homicide jurors be read an instruction admonishing them to consider with caution the identification testimony of **both** Commonwealth witness Allyson Cyrus-Arrington **and** Commonwealth witness Henry Nugget Norris – and, if so, did Post-Conviction Counsel also render ineffective assistance when she opted to limit the ineffective trial counsel claim that she advanced with respect to the identification testimony issue to the claim referred to in Question 1?

6. "Did trial counsel render ineffective assistance when he elicited from Appellant testimony [that] revealed that Appellant had previously been convicted of the crime of armed robbery [doing so rather than seeking to have all references to Appellant's prior conviction barred on grounds that the revelation of such evidence would violate Appellant's federal due process rights, Appellant's state due process rights, and the Pa.R.E. 403 ban on the admission of unduly prejudicial evidence) – and, if so, did Post-Conviction Counsel also render ineffective assistance when she failed to include this claim in the amended petition for Post-Conviction Collateral Relief that she filed on Appellant's behalf? "

7. "Did trial counsel render ineffective assistance when he elicited from Appellant testimony [that] revealed that Appellant's prior conviction bore the title "Armed Robbery" (doing so rather than seeking to have Appellant's prior conviction referred to solely as a "conviction for a Crime involving dishonesty or false statement," thereby not only comporting with the text of Pa.R.E. 609 but also ensuring that a disclosure would not occur that violated Appellant's federal due process rights, Appellant's state due process rights, and the Pa.R.E. 403 ban on the admission of unduly prejudicial evidence) – and, if so, did Post-Conviction Counsel also render ineffective assistance when she failed to include this claim in the amended petition for Post-Conviction Collateral Relief that she filed on Appellant's behalf?"

8. "Did trial counsel render ineffective assistance when (A) he failed to ensure that alibi witness C. Erskine Smith III had been properly subpoenaed after he had been listed as a potential alibi witness, (B) when he failed to request that a subpoena compelling Smith's appearance be enforced (assuming, *arguendo,* that a proper subpoena had been issued for his appearance), and (C) when he failed to object to the prosecutor's reference to Smith as being an inmate of the Allegheny County Jail – and, if so, Post-Conviction Counsel also render ineffective assistance when she failed to include these three related claims in the amended petition for Post-Conviction Collateral Relief that she filed on Appellant's behalf?"

Superior Court Opinion, 3/16/2012 (ECF No. 13-7).

The Court will now proceed to address seriatim each of these claims.

1. *Claim 1 - The trial court erred in failing to grant Petitioner's motion to sever his case from his  co-defendant's case.*

Hawkins argues that his rights under the Sixth Amendment's Confrontation Clause were violated by the trial court's refusal to sever his trial from that of his co-defendant Rebecca Young, arguing that he was unfairly prejudiced by the statement of Ms. Young[3] which was admitted in violation of *Bruton v. United States*, 391 U.S. 123 (1968), and its progeny, and *Crawford v. Washington,* 541 U.S. 36 (2004).[4]

This issue was addressed and rejected on its merits by the Superior Court on direct appeal. Superior Court Memorandum, 4/23/2008 (ECF No. 11-7, at 16 – 24). Because Hawkins's claim was adjudicated on the merits in state court, the AEDPA standard of review must be applied by this Court. If the Court determines that an error occurred, the Court must perform an independent analysis of the evidence to determine if the error caused harm rather

---

[3]  The statement of Ms. Young was introduced in the Commonwealth's case in chief through the testimony of  Detective Lawrence Carpico.

[4]  Where the declarant does not appear at trial, the Confrontation Clause bars the introduction  of a testimonial, out-of-court statement unless the declarant is unavailable at trial and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *Davis v. Washington,* 547 U.S. 813, 821 (2006).

than deferring to the state court's conclusion. *Williams v. Folino*, -- F. App'x --, 2015 WL 5132176 (3d Cir. Sept. 2, 2015) (citing *Bond v. Beard*, 539 F.3d 256, 276 (3d Cir. 2008)).

The "clearly established Federal law" at issue is the Sixth Amendment right of a criminal defendant to "be confronted with the witnesses against him." U.S. Const. amend. VI. "The contours of this right as relevant to [Hawkins's] petition were established in three Supreme Court cases: *Bruton v. United States,* 391 U.S. 123 (1968); *Richardson v. Marsh*, 481 U.S. 200 (1987); and *Gray v. Maryland,* 523 U.S. 185 (1998)." *Washington v. Secretary Pa. Dept of Corrections,* 801 F.3d 160, 165 (3d Cir. 2015) (internal citations omitted), *cert. denied*, -- U.S. --, 136 S. Ct. 1713 (April 25, 2016). The United States Court of Appeals for the Third Circuit summarized these three cases as follows:

> Taken together, the current state of the law is that there is a Confrontation Clause violation when a non-testifying co-defendant's confession is introduced that names another codefendant, *Bruton*, 391 U.S. at 126, or that refers directly to the existence of the codefendant in a manner that is directly accusatory. *Gray*, 523 U.S. at 193-94. That is because such statements present a "substantial risk that the jury, despite instructions to the contrary, [will] look[] to the incriminating extrajudicial statements in determining [the defendant's] guilt." *Bruton,* 39 U.S. at 126. But there is no violation if the confession is properly redacted to omit any reference at all to the codefendant, making it more likely that the jury will be able to follow the court's instruction to disregard this evidence in rendering its verdict. *Richardson*, 481 U.S. at 208. It is against this background that we assess whether the Pennsylvania Superior Court unreasonably applied clearly established federal law.

*Washington*, 801 F.3d at 166. The Superior Court cited to, and relied upon, these three United States Supreme Court cases and one Pennsylvania Supreme Court case, *Commonwealth v. Travers*, 768 A.2d 845 (Pa. 2001). In rejecting the claim, the Superior Court held that

> Unlike any of the cases relied upon by Appellant, the statements by Ms. Young to Detective Carpico did not involve any redaction at all. She herself did not provide Appellant's name and instead used the term "Dude" when describing the people and events surrounding the shooting. As such, the statements required no alteration which might point the finger at Appellant, Indeed, as in *Travers*,

"[t]he redacted statement here neither referred to appellant by name (the *Bruton* proscription) nor did it contain an obvious indication of a deletion or an alteration that was the functional equivalent of naming him (the *Gray* proscription)." 564 Pa. at 372, 768 A.2d at 851. Furthermore, at the point in Detective Carpico's testimony when he said that Ms. Young did reveal "Dude's" real name, no further questioning occurred which might have elicited a response invoking the *Bruton* rule.[FN 6] Based on our review, we conclude that the statements challenged by Appellant on appeal did not "powerfully incriminate him or "obviously draw [] attention" to him such that his right to confrontation was offended.

> [FN 6] Further, unlike in *Gray* and [*Commonwealth v. Ma*, 721 A.2d 1108 (Pa. Super. 1998)], there was no testimony in this case that Appellant was arrested immediately after obtaining Ms. Young's statement. *See Gray*, 523 U.S. at 188; *Ma*, 721 A.2d at 1110 n.3.

Appellant also makes much of the fact that Ms. Young's statement further implicated him by referring to his black Honda Accord and his residence in McKees Rocks since there was other evidence in this case that Appellant did live in McKees Rocks and did drive a black Honda Accord. . . . [A]s our Supreme Court has reasoned, "It is apparent now, after *Gray,* that the Sixth Amendment is only implicated where the implication arises from the face of the redacted statement and not from linkage to other evidence." *Travers, supra,* 564 Pa. at 372 n.2, 768 A.2d at 850 n.2. For all of these reasons, we find no merit to Appellant's first issue on appeal.

Superior Court Opinion, 4/23/2008 at 10-1 (ECF No. 11-7 at 23-24).

It appears to this Court that Young's statement falls somewhere between that deemed constitutionally infirm in *Bruton* and that deemed acceptable in *Richardson*. Unlike *Bruton*, where the co-defendant's statement identified the defendant by name, Young's statement never identified Hawkins by name. However, unlike *Richardson*, where the co-defendant's statement contained no reference to the existence of a co-defendant, Young's statement not only referred to a co-conspirator, but laid the blame for the murder directly at this co-conspirator's feet.

The essential question in reviewing Young's statement under *Bruton, Richardson*, and *Gray* is whether the statement incriminated Hawkins powerfully, directly, and on its face or only inferentially in light of other evidence. The Commonwealth's consistent theory of the case was

that Young had "hatched a plot with [Hawkins] to get back at Damond Hunter." (TT at 24.) [5] While Young may not have identified Hawkins by name, her statement clearly identified the vehicle "Dude" was driving, a black Honda sedan four-door (TT at 315), and the "Dude's" residence in McKees Rocks (*id*.), both of which were directly linked to Hawkins through the testimony of other witnesses. Without doubt, these statements were powerfully incriminating as to Hawkins. Thus, the Superior Court's determination was an unreasonable application of clearly established federal law as set out by the United States Supreme Court.

The next determination, therefore, must be whether the Confrontation Clause error was harmless, which requires a determination of whether Young's statement had a substantial and injurious effect on the jury to merit relief. *Fray v. Pliler,* 551 U.S. 112, 121-22 (2007); *Vazquez v. Wilson*, 550 F.3d 270, 282 (3d Cir. 2008). "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless." *O'Neal v. McAninch,* 513 U.S. 432, 436 (1995) (internal quotations omitted). This inquiry is fact intensive and the court can consider issues such as the quantity and credibility of other incriminating evidence. *Bond,* 539 F.3d at (holding *Bruton* violation was harmless where an eyewitness with an unobstructed view of the shooter identified the defendant and was "absolutely certain" of the identification; another witness gave a statement identifying the defendant, although she retracted it at trial; the

---

[5]     In its closing argument, the Commonwealth described the relationship between Young and Hawkins as follows:

> There is in this room a hired gun. That's Gillette Hawkins. He is the man that was maybe not paid in money but engaged to go to a place with a gun and take care of business. And there is in this room, and that is Rebecca Young, the woman that hired him.

(TT at 509).

defendant confessed, although he contended at trial that his confession had been coerced; and the statement that violated *Bruton* "added little to this compelling evidence . . . , particularly since [the codefendant] provided an alibi defense and his counsel suggested in closing that [his] confession had been coerced").

This Court concludes that the evidence against Hawkins was such that the error did not have a substantial and injurious effect on the verdict. A review of the trial record reflects that the erroneously admitted statement at most had a very slight effect on the verdict in light of the other evidence admitted at trial. At trial, Henry Norris, one of the individuals held at gunpoint, and Allyson Cyrus-Arrington, the woman who was shot in the face, both identified Hawkins as the shooter. Further, DeWayne Rosser, an employee of the group residential home in McKees Rocks where Hawkins lived, testified that Hawkins and Young arrived at the group residential home together at 11:05 PM on the night of the shootings.

Taken together, this evidence leaves no grave doubt about the influence of the *Bruton* violation on the verdict. Each witness offered pieces of evidence that, taken together, provided a solid foundation for the jury's verdict. Thus, the Court finds that the introduction of Young's statement did not have a substantial and injurious effect or influence on the verdict. It is, therefore, recommended that Claim 1 be denied.

    2.    *Claim 2 – Insufficient evidence was presented to support Petitioner's guilt as to the crime of criminal conspiracy.*

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In rejecting this claim, the Superior Court applied the Pennsylvania equivalent of the *Jackson* standard, *Evans v. Court of Common Pleas, Delaware Cnty.*, 959 F.2d 1227, 1233 (3d Cir. 1992) (the test for insufficiency of the evidence is the same under both Pennsylvania and federal law). Hawkins has not shown that the decision of the state court was contrary to clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d); *Williams,* 529 U.S. at 406. Therefore, the only remaining question for this Court to decide is whether the decision of the state court was an "unreasonable application" of *Jackson*. The United States Supreme Court has made clear that:

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury … to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the [trial court's] verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the [trial court]." *Cavazos v. Smith*, 565 U.S. 1, __ (2011) (*per curiam*) (slip op., at 1). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. __, __ (2010) (slip op., at 5)).
>
>       - - -
>
> [T]he only question under *Jackson* is whether [the state court's] finding was so insupportable as to fall below the threshold of bare rationality. The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d).

*Coleman*, 132 S. Ct. at 2062, 2065.

In the instant case, after summarizing the law of criminal conspiracy, the Superior Court rejected Hawkins's claim stating:

> Appellant's only argument is that the evidence could also support a conclusion "that the gunman acted alone," and therefore, the jury was left to speculate. Appellant's brief at 69-70. Our review of the evidence, viewed in its proper light, finds ample support for Appellant's conviction of criminal conspiracy. Certainly the jury could infer from the circumstances and conduct of Appellant and Ms. Young that an agreement existed between them. We may not substitute our judgment for that of the jury in evaluating the weight of the evidence. (internal citation omitted). Accordingly, we find that Appellant's second issue also merits no relief.

Superior Court Memorandum at 14, 4/23/2008 (ECF No. 11-7 at 27).

The Court finds that Hawkins fails to carry his burden to demonstrate that the Superior Court's disposition of his claim of insufficiency of the evidence constituted an unreasonable application of *Jackson*. 28 U.S.C. § 2254(d). Hawkins cannot accept that he was convicted even though he presented an alibi defense at trial. (TT at 427 – 433). But, as the state appellate court held, there was sufficient evidence introduced at Hawkins's trial for the jury to convict him.

For these reasons, the Court finds that the state court's adjudication of Hawkins's claim did not "result[ ] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d). Accordingly, because Hawkins's claim of insufficiency of the evidence does not warrant habeas relief, it is recommended that Claim 2 be denied.

3.      *Claim 3 – Trial counsel gave ineffective assistance for failing to request a Kloiber instruction.*

In Claim 3, Hawkins contends that his trial counsel was ineffective for failing to request a *Kloibe*r instruction, which would have cautioned the jury as to Allyson Cyrus-Arrington's identification of Hawkins as the man who shot her. As explained by the state courts, a *Kloiber* instruction is a state law instruction based upon *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa.

1954). Essentially, state law requires a *Kloiber* instruction where there is a necessity to tell the jury that they should receive eyewitness identification testimony with caution where there is a question as to whether the identification is accurate or not.

Under the now familiar *Strickland* standard, Hawkins must show that his counsel's performance was deficient and that this deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The Superior Court addressed this issue on the merits and found that trial counsel was not ineffective for failing to request a *Kloiber* instruction because the pre-requisites for requiring a *Kloiber* instruction under state law were not met. Therefore, counsel could not be ineffective for failing to request such an instruction that was not called for and would not be proper under state law. Specifically, the appellate court reasoned:

> To the extent Appellant now complains that Ms. Cyrus-Arrington's observations occurred within a "split second," the record makes clear the witness saw the shooter face-to-face, in a well-lit area, for long enough to note the characteristics of his face. On this record, the PCRA court concluded a Kloiber instruction would have been "unwarranted in light of the fact that the witness had not misidentified [Appellant] in the past, and she was in a position to clearly see [Appellant] prior to being shot by him." (See PCRA Court Opinion, filed August 24, 2010, at 5.). We agree and we emphasize that Ms. Cyrus-Arrington's identification was positive, unshaken, and not weakened by a prior failure to identify *See [Commonwealth v.] Upshur,* [764 A.2d 69 (Pa. Super. 2000) (en banc), appeal dismissed as improvidently granted, 566 Pa. 589, 782 A.2d 538 (2001))]. Thus, Appellant's claim lacks arguable merit and warrants no relief. *See [Commonwealth v.] Poplawski*, [852 A,2d 323 (Pa. Super. 2004)].

Superior Court Memorandum, 3/16/2012 (ECF No. 13-7) It follows that if a *Kloiber* instruction was not required or appropriate under state law as explained by the state courts, then trial counsel's failure to request such a *Kloiber* instruction cannot be deemed deficient performance for an ineffective assistance of counsel claim, which is precisely what the state courts held. This

disposition of the ineffectiveness claim is neither contrary to nor an unreasonable application of Supreme Court precedent. Accordingly, it is recommended that Claim 3 be denied.

4. *Claim 4 - Trial counsel gave ineffective assistance for failing to request a cautionary jury instruction for the purpose of clarifying why Erskine Smith did not attend and testify at trial.*

Hawkins argues that his trial counsel provided ineffective assistance by failing to request a cautionary jury instruction for the purpose of clarifying why his alibi witness, Erskine Smith, did not attend and testify at trial.[6] This issue was addressed and rejected on its merits by the Superior Court on appeal from the denial of PCRA relief. Superior Court Memorandum, 3/16/2012 (ECF No. 13-7, at 17 – 19). Because Hawkins's claim was adjudicated on the merits in state court, this Court must review the claim under AEDPA's standard of review.

As with Claim 3, to prevail on this claim Hawkins must show that his counsel's performance was deficient and that this deficiency prejudiced his defense. *Strickland,* 466 U.S. 668 (1984).

Under Pennsylvania law, "where an accused raises an alibi defense and names a person who it is claimed can support the defense but fails to call him as a witness, it is permissible for the jury to infer that the testimony of the absent witness would not have been favorable to the accused." *Commonwealth v. Leonard*, 452 A.2d 587, 590 (Pa. 1982). During cross examination, the prosecutor asked Hawkins if he knew where Smith was, to which Hawkins replied "No. At the time I do not." (TT at 436) and in his closing the prosecutor stated, "Now, you shouldn't speculate about why you didn't hear from [Erskine Smith], but ask yourself, is that available corroboration that was not presented to you?" (TT at 498).

---

[6] In the Notice of Possible Alibi Defense, Hawkins, through counsel, indicated that if an alibi defense is presented, witness Erskine Smith III may be called in support of the Defendant's claim. (ECF No. 12-3 at 27).

The Superior Court determined (i) that the prosecutor expressly cautioned the jury not to speculate on the reasons why Erskine Smith failed to testify and (ii) that the prosecutor did not lead the jury to believe an adverse inference was mandatory. As such, the Superior Court found that trial counsel did not commit error in failing to request a cautionary instruction regarding the nature of what the jury could infer due to Erskine Smith's non-appearance.

As the state court found, it was not improper for the prosecutor to comment upon the absence of Erskine Smith, an alleged alibi witness. Even assuming, however, that trial counsel were deemed deficient in failing to request a cautionary instruction, Hawkins cannot establish that he was prejudiced by trial counsel's alleged ineffectiveness. The jury was explicitly instructed that Hawkins's own testimony could be sufficient to raise a reasonable doubt of his guilt:

> Mr. Hawkins also has testified that or presented evidence that he was not present at the scene but rather was at another location at the time the crime took place. You should consider this evidence along with all the other evidence in the case in determining whether or not the Commonwealth has met its burden of proving beyond a reasonable doubt that a crime was committed and that the defendant, Mr. Hawkins, himself committed it or took part in committing it.
>
> The evidence that Mr. Hawkins offered that he was not present, either by itself or together with other evidence, may be sufficient to raise a reasonable doubt of his guilty. If you have a reasonable doubt of the defendant's guilt, that is Mr. Hawkins's guilt, you must find him not guilty.

(TT 537 – 38). Accordingly, the Court finds that the state court's conclusion that trial counsel rendered effective assistance on this issue is not contrary to Untied States Supreme Court precedent, nor an unreasonable determination of the facts.

5. *Claims 5, 6, 7, and 8 are Procedurally Defaulted*.

Each of these claims raises a layered ineffective assistance of counsel argument. Respondents argue that these claims are procedurally defaulted. The Court agrees.

Both the PCRA court and the Superior Court refused to address these claims on the merits finding that they were waived as none of these four claims had been properly presented to the PCRA court before being presented to the Superior Court. Such state law waiver rules are independent and adequate state law grounds that bar federal habeas review. *Peterson v. Brennan*, 196 F. App'x 135 (3d Cir. 2006), *cert. denied,* 127 S. Ct. 2067 (2007). These are rules of general applicability which are "firmly established, readily ascertainable, and regularly followed." *See Leyva v. Williams*, 504 F.3d 357, 366 (3d Cir. 2007) (quoting *Szuchon v. Lehman*, 273 F.3d 299, 327 (3d Cir. 2001)). Therefore, Hawkins's claims are procedurally defaulted.

Hawkins, however, may obtain federal habeas review of his defaulted claims if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider these claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To demonstrate cause sufficient to excuse default, Hawkins must prove "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman,* 501 U.S. at 753.

In *Martinez v. Ryan,* -- U.S. ---, 132 S. Ct. 1309, 1315 (2012), the United States Supreme Court created a narrow exception to the rule set forth in *Coleman* that an attorney's errors in post-conviction proceedings do not constitute cause to excuse a procedural default. The Court in *Martinez* held that a prisoner may establish cause for the procedural default of an ineffective-assistance-of-trial-counsel claim by demonstrating the ineffective assistance of his or her counsel in "initial-review collateral proceedings," which the Court defined as collateral proceedings that "provide the first occasion to raise a claim of ineffective assistance at trial." *Id.*

Hawkins relies on the holding in *Martinez* to attempt to overcome the procedural default of Claims 5, 6, 7, and 8. Although *Martinez* serves as a potential basis for establishing "cause and prejudice" to excuse a procedural default, the default can only be overcome if the petitioner demonstrates "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, <u>which is to say that the prisoner must demonstrate that the claim has some merit.</u>" *Martinez*, 132 S. Ct. at 1318 (emphasis added). Hawkins has not made that showing here, instead simply providing the most cursory of arguments:

> 12. <u>*MARTINEZ* EXCUSES THE WAIVER SUFFERED HERE.</u>  PCRA Counsel was ineffective for waiving these issues #2, 3, 4, and 5.  The procedurally defaulted claims noted should be heard by This Court.

> 14.  The Petitioner concedes that only two claims, identified here as (D) and (I) are the only two (2) claims that he Superior Court of Pennsylvania addressed on their merits, in the PCRA appeal number #1511 WDA 2011.  Issues / claims identified here as (E) through (H) were considered waived by the Superior Court because they were not presented to the PCRA Court before being presented to the Superior Court.  PCRA Counsel was ineffective in this regard and as stated earlier in this § 2254 habeas corpus petition the said Petitioner asserts that the <u>procedural default should be excused</u> because of <u>MARTINEZ v. RYAN,</u> 132 S.Ct. 1309 (2012).  PCRA Counsel should have presented all of these claims in the Amended PCRA petition, instead of just the three claims that PCRA Counsel did present in the Amended PCRA petition.

> i.  Petitioner Hawkins has suffered a procedural default on claim raised in the Superior Court Appeal No. 1511 WDA 2011, Claim numbers 2, 3, 4, 5,  PCRA Counsel failed to include those claims concerning ineffective of trial counsel  in the PCRA petition in the PCRA Court and therefore these claims were waived for Superior Court review.  Petitioner would like to ask that This Court consider excusing the procedural default of those claims under MARTINEZ vs. RYAN, 132 S. CT. 1309 (2012).

Petition (ECF No. 1). Hawkins cannot establish "cause and prejudice" to excuse a procedural default under *Martinez* without a showing that his underlying claim had some merit. Indeed, the fleeting invocation of *Martinez* in the petition, without facts offered to support the applicability of *Martinez* in this context, does not satisfy the burden of showing that the underlying

constitutional claim had some merit. Thus, *Martinez* cannot serve as the basis for establishing "cause and prejudice" to excuse Hawkins's procedural default.[7] Furthermore, Hawkins does not argue that his procedural default should be excused because of "a fundamental miscarriage of justice." Accordingly, it is recommended that Claims 5, 6, 7, and 8 be dismissed as procedurally defaulted.

### D. Certificate of Appealability

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. Applying those standards here, the Court concludes that jurists

---

[7] In fact, Respondents provided argument in their brief as to why the underlying ineffective assistance claims lack merit. (ECF No. 10 at 62 - 80). Although this Court does not base its conclusions on Respondents' assertion that the underlying ineffective assistance claims lacked merit, Respondents' briefing on this matter further illustrates Hawkins's need to demonstrate that the claims had some merit in order to satisfy the *Martinez* standard and excuse the procedural default at issue.

of reason would not find it debatable whether each of Hawkins's claims should be dismissed. Accordingly, a certificate of appealability should be denied.

### E. Conclusion

For all of the above reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied. It is further recommended that there is no basis upon which to grant a certificate of appealability.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days after service of this Report and Recommendation, to file written Objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

Dated: June 30, 2016

cc:     GILLETTE HAWKINS
        GQ9407
        SCI Huntingdon
        SPECIAL MAIL - OPEN ONLY IN THE PRESENCE OF THE INMATE
        1100 Pike Street
        Huntingdon, PA 16654
        (via U.S. First Class Mail)

        Ronald M. Wabby , Jr.
        Office of the District Attorney
        (via ECF electronic notification)